IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:20-cr-00174-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RYAN KAMADA,

    Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTION TO PRESENTENCE INVESTIGATION REPORT [ECF No. 19]**

---

On December 15, 2020, the defendant objected to the Probation Office's Presentence Investigation Report (PSR). ECF No. 19. The defendant argued that the PSR should include a four-offense-level mitigating role reduction because, the defendant claimed, he was a minimal participant in the criminal activity that served as the basis for his obstruction offense, pursuant to Sentencing Guidelines (U.S.S.G.) § 3B1.2(a). ECF No. 19 at 4-5. For the reasons that follow, the United States opposes the defendant's objection.

**I.   ARGUMENT**

As relevant here, the Guidelines provide for a four-offense-level decrease if, "[b]ased on the defendant's role in the offense," "the defendant was a minimal participant in any criminal activity." U.S.S.G. § 3B1.2(a). A "participant" is "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.2 cmt. app. n. 1 (citing U.S.S.G. § 3B1.1 cmt. app. n. 1). The Guidelines explain that a minimal-participant adjustment "is intended to cover defendants who are plainly among the least culpable of those

involved in the conduct of a group." *Id.* at § 3B1.2 cmt. app. n. 4.

The defendant is not entitled to a downward adjustment under this guideline for two independent reasons. First, he is the only participant criminally responsible for his offense. Second, even if the Court were to conclude that Kamada's obstruction offense involved more than one participant, the defendant's role in that offense was not minor or minimal.

### A.  The Defendant is the Sole Participant in the Obstruction to Help his Friend

The defendant was a sitting state court judge who leaked the existence of a warrant in an abuse of power designed to help his close friend Geoffrey Chacon avoid possible criminal exposure. He admitted in his plea agreement, and argues now (ECF No. 19 at 2), that his "sole[]" goal was to protect Chacon from possible criminal exposure. Therefore, the defendant was the sole culpable actor in successfully convincing Chacon to change his behavior in order to "protect Chacon from potential criminal legal exposure flowing from Chacon's relationship and potential unlawful dealings with Drug Dealer." PSR ¶ 21.

Chacon is not a "participant" as that term is defined in Application Note 1 to U.S.S.G. § 3B1.1 because he did not participate in a crime when he received an unsolicited call on April 24, 2019, to passively receive the defendant's corrupt beneficence. Nor did Chacon "participate" in corrupt obstruction when the defendant followed up in the weeks that followed with additional statements designed to increase the odds that the defendant's obstruction would have his desired outcome. *See* U.S.S.G. § 3B1.2 cmt. app. n. 2 ("an adjustment under this guideline may not apply to a defendant who is the only defendant convicted of an offense unless that offense involved other participants in addition to the defendant and the defendant otherwise qualifies for such an adjustment"). Put another way, if the conduct is framed as the defendant desires — solely through the lens of his friendship with Chacon and solely in terms of their one-on-one

interactions without reference to Chacon's other associations — Chacon is legally indistinct from an undercover law enforcement officer who listens and receives information, but does nothing more than passively bear witness to the crime.  *Cf.* U.S.S.G. § 3B1.1 cmt. app. n. 1.

The defendant is conflating his crime with later separate and independent crimes committed by his friend.  Chacon made his own choice to pay the defendant's favor forward by helping his own friends.  By admission, the defendant did not participate in those later crimes, even if he certainly should and could have foreseen them as natural and probable consequences.  In effect, the defendant wants to favorably construe his conduct as narrowly as possible in the broad context of federal sentencing — portraying it as "just" the leak to Chacon to minimize his conduct — but, in the next breath, expand it as broadly as possible to include Chacon's downstream conduct in an effort to receive a benefit under this specific guideline.  The Court should not allow him to have it both ways.

### B. The Defendant's Role as a State Court Judge Obstructing a Proceeding to Help His Friend Was Not Minimal

The defendant argues that he "cannot be characterized as anything other than a minimal participant in the criminal activity" because he was "criminally liable *only* because his conduct was inappropriate and reckless, and because he reasonably should have foreseen that his actions could result in the adverse impacts the criminal proscription is designed to prevent."  ECF No. 19 at 3-4 (citing U.S.S.G. § 3B1.2(a) cmt. app. n. 3(A), 3(C), & 4).  That argument misstates both the applicable Guidelines provisions and the facts.  As the defendant recognizes later in his brief (ECF No. 19 at 4), the determination of whether a mitigating-role adjustment applies is "based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case," U.S.S.G. § 3B1.2(a) cmt. app. n. 3(C).  It does not turn solely on the defendant's mental state or his knowledge (or lack thereof) of all of the effects of his criminal

conduct. Rather than focus solely on any one fact or factor, the Court should consider the five factors suggested by the Guidelines. U.S.S.G. § 3B1.2 cmt. app. 3(C)(i) – (v).

It is simply incorrect to say that the defendant "undisputedly lacked subjective knowledge of the true nature of what he was doing." ECF No. 19 at 4. The government disputes any characterization of the facts as suggesting that a sitting state court judge could lack subjective knowledge of the corrosive nature of an obstruction crime. The defendant knew exactly what he was doing. He was abusing the privilege of his position to help a close friend avoid possible criminal exposure. This was a conscious choice done on his own initiative, without prompting, pleading, or coercion. The "degree to which the defendant participated in planning" and the entirely complete "discretion the defendant had in performing" acts related to the crime are both high. U.S.S.G. § 3B1.2 cmt. app. 3(C)(ii) and (iv). No one else planned the defendant's April 24, 2019, call. No one else told him to continue to provide Chacon purported details about the ongoing investigation. Far from not understanding the "true nature" of his crime, the defendant's legal and ethical education and experience, professional milieu, and understanding of the enormous deference given to judges in our system of justice gave him much greater knowledge of its odious nature than any typical obstruction defendant.

Furthermore, contrary to what the defendant claims (ECF No. 19 at 4), his leak of confidential warrant information to Chacon was not "simply the 'but-for' cause of the chain of 'criminal activity'" that resulted in little evidence being discovered at Drug Dealer's home when WCDTF officers searched it. The defendant, a former Colorado State judge with experience in criminal matters, is ineligible for a mitigating-role adjustment for repeatedly engaging in obstructive conduct that both intentionally and foreseeably affected a then-ongoing investigation into a significant drug trafficking organization. Put in terms of the Application Notes, the

"degree to which the defendant understood" the scope and structure of an obstruction offense is exceedingly high. *See* U.S.S.G. § 3B1.2 cmt. app. 3(C)(i). Judges, perhaps more than any other participants in the legal system, are uniquely situated to understand the extreme effects that might result from obstructing a drug investigation.

The defendant is also ineligible because the April 24 call in which he relayed the substance of the warrant to Chacon was not an isolated incident. The "nature and extent of the defendant's participation in the commission of the criminal activity" is, as it was with the other guideline factors, high. *See* U.S.S.G. § 3B1.2 cmt. app. 3(C)(iv). In the days and weeks following that call, the defendant repeatedly reached out to Chacon and described the intricacies of the ongoing investigation, telling Chacon that "the investigation was ongoing and explain[ing] that the warrant for Drug Dealer's phone had to be renewed after periods of time," "that investigators were pursuing the investigation 'the old school way' and that 'people are flipping,'" and "that subjects of the investigation were cooperating with law enforcement by providing information about the drug-trafficking activities of their confederates." PSR ¶¶ 22-23.

The fact that the defendant "invented," PSR ¶ 22, these additional facts is irrelevant to whether he deserves a mitigating-role adjustment under the Guidelines. They served his ongoing and intentional obstructive goal to isolate his friend Chacon from law enforcement. The defendant may have known that he was making up these facts about the ongoing investigation, but Chacon believed that they were real. There is no question that the defendant's actions resulted in the clear and foreseeable consequence that Chacon fed the information to Drug Dealer and caused "Chacon and Drug Dealer to change their patterns of conduct and interfered with the WCDTF's investigation." PSR ¶ 24. Chacon and Drug Dealer tailored the changes in their behavior to the information that the defendant had relayed, such as "by physically distancing"

5

themselves, "using their work phones rather than their personal phones" based on "concern that law enforcement was monitoring," "slow[ing] down the pace of [the] drug operation in an effort to divert law enforcement's attention," and "'clean[ing]' [Drug Dealer's] house of evidence relating to drug activities." PSR ¶¶ 24-25.  The defendant's pattern of conduct and its tangible effects demonstrate that he alone is responsible for Chacon's changes in behavior.  Moreover, Kamada is just as culpable as Chacon for Drug Dealer's changes in behavior and their obstructive effects on the WCDTF investigation.  It is certainly not a circumstance where the defendant was "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2 cmt. app. n. 4.

The defendant cites (ECF No. 19 at 4-5) *United States v. Yurek*, 925 F.3d 423 (10th Cir. 2019), in support of his argument that he deserves a four-level mitigating role reduction.  It does not buttress his claim.  As the defendant accurately observes (ECF No. 19 at 4), *Yurek* held that a defendant is not categorically ineligible for a mitigating-role adjustment under § 3B1.2 based on evidence that the defendant's participation in an offense was "central and necessary" to the commission of the crime, *United States v. Gehrmann*, 966 F.3d 1074, 1082-83 (10th Cir. 2020) (analyzing *Yurek*, 925 F.3d at 444-47) (internal quotation marks omitted).  As addressed above, the defendant is not simply ineligible for a mitigating-role adjustment because his April 24 leak was the initial but-for cause of Chacon and Drug Dealer's changes in behavior.  Rather, he is ineligible because he engaged in a pattern of conduct corruptly designed to isolate Chacon from law enforcement and with the foreseeable effect of obstructing the WCDTF investigation that made him just as culpable as Chacon.

Finally, it is also inaccurate to say that the defendant did not "stand to benefit from the obstruction."  ECF No. 19 at 14.  When the defendant discovered that Drug Dealer was the focus

6

of a criminal investigation, he immediately recognized the possibility that Chacon, one of the most important people in his life, might be caught up in a criminal case. Instead of following his duty, he followed his heart. He took action to decrease the risk that his close friend would be separated from him. Thus, the "degree to which the defendant stood to benefit" from his obstruction was significant. It would be tempting to call the benefit "incalculable," but the defendant was quite capable of making the calculation given his high intelligence, education, and experience. He knew the harms, risks, and ethical ramifications, balanced them against the perceived benefit, and still made a conscious and deliberate decision to commit this crime.

## II.   CONCLUSION

For the reasons stated above, the Court should overrule the defendant's objection to the PSR in which he argues for a four-offense-level mitigating-role reduction pursuant to U.S.S.G. § 3B1.2(a).

Respectfully submitted this 15th day of January, 2021.

|  | JASON R. DUNN<br>United States Attorney |  | COREY R. AMUNDSON<br>Chief |
|---|---|---|---|
| By: | *s/Bryan David Fields*<br>Bryan David Fields<br>Assistant U.S. Attorney<br>U.S. Attorney's Office<br>1801 California St., Ste. 1600<br>Denver, CO 80202<br>Telephone: 303-454-0200<br>Fax: 303-454-0406<br>E-mail: Bryan.Fields3@usdoj.gov<br>Attorney for Government | By: | s/*John P. Taddei*<br>John P. Taddei<br>Trial Attorney<br>U.S. Department of Justice<br>Public Integrity Section<br>1331 F. St. NW, Ste. 300<br>Washington, DC 20004<br>Telephone: 202-514-1412<br>Fax: 202-514-3003<br>Email: John.Taddei@usdoj.gov<br>Attorney for Government |

## CERTIFICATE OF SERVICE

I certify that on this 15th day of January, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

s/ *Bryan David Fields*
BRYAN DAVID FIELDS
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Bryan.Fields3@usdoj.gov