IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:20-cr-00174-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RYAN KAMADA,

    Defendant.

## DEFENDANT'S OBJECTION TO PRESENTENCE REPORT

Pursuant to U.S. Sentencing Guidelines (U.S.S.G.) § 6A1.2(b), Defendant Ryan Kamada, by and through counsel, Michael L. Bender and T. Markus Funk of the law firm Perkins Coie LLP, hereby objects to the Probation Office's Presentence Investigation Report (PSR) (ECF No. 26) prepared in this matter. Defendant Kamada objects on three separate grounds.

*First*, the PSR improperly includes an enhancement for substantial interference with the administration of justice pursuant to U.S.S.G. § 2J1.2(b)(2). This enhancement is inappropriate because Defendant Kamada's conduct did not result in "the premature or improper termination of a felony investigation." Neither the felony investigation involving Alberto Loya, nor the felony investigation involving Geoffrey Chacon, were terminated; to the contrary, both men ultimately pleaded guilty to the offenses with which they were charged. Moreover, the government has not established that Defendant Kamada's conduct resulted in the "unnecessary expenditure of substantial governmental or court resources," apart from costs associated with investigating and prosecuting Defendant Kamada's underlying obstruction offense. Under Tenth Circuit precedent, "'expenses associated with the underlying [obstruction] offense should not form the basis of an

upward adjustment.'" *See United States v. Sinclair*, 109 F.3d 1527, 1539 (10th Cir. 1997) (quoting *United States v. Duran*, 41 F.3d 540, 546 (9th Cir. 1994)).

*Second*, the PSR fails to include a mitigating role adjustment pursuant to U.S.S.G. § 3B1.2(a). A mitigating role adjustment is appropriate in this case because Defendant Kamada "was substantially less culpable" than the only other participant in the criminal activity, Chacon. Although Defendant Kamada's sharing of sensitive information was, by his own admission, "inappropriate and reckless," he—unlike Chacon—undisputedly (1) had no subjective intent to interfere with the then-ongoing criminal investigation of Loya, and, in fact, (2) never foresaw that Chacon would pass this information on to Loya or anyone else. Accordingly, Defendant Kamada cannot be characterized as anything other than a "minimal participant in [the] criminal activity," as provided by Section 3B1.2(a), and should receive a four-level decrease to the base offense level. *See* U.S.S.G. § 3B1.2, cmt. n.3(A), 3(C), and 4.

*Third*, given the defects outlined above, the PSR erred in its calculation of the recommended Guidelines range. Once the enhancement for "substantial interference with the administration of justice" is removed, and the "minimal participant" mitigating role adjustment is applied, the total offense level should be nine (9). The PSR correctly has found that Defendant Kamada's criminal history score is zero, which places him in criminal history category I. (ECF No. 26, ¶ 57.) Accordingly, the recommended Guidelines range should be four to 10 months, and Defendant Kamada should fall within Zone B, making him eligible for a sentence of probation in combination with home detention pursuant to U.S.S.G. § 5B1.1(a)(2). *See* Sentencing Table.

I.  **THE PSR IMPROPERLY INCLUDES AN ENHANCEMENT FOR SUBSTANTIAL INTERFERENCE WITH THE ADMINISTRATION OF JUSTICE.**

The PSR argues that the "substantial interference with the administration of justice" enhancement is appropriate because "the leak resulted in the premature or improper termination of a felony investigation and/or unnecessary expenditure of substantial governmental or court resources." (ECF No. 26, ¶ 45); *see* U.S.S.G. § 2J1.2 cmt. n.1.  Defendant Kamada's conduct, however, did not result in either.

The enhancement is independently inapplicable because it only applies to obstruction offenses that constitute "*more serious forms* of obstruction," unlike Defendant Kamada's conduct here.  *See* U.S.S.G. § 2J1.2, commentary (emphasis added).

A.  **Defendant Kamada's Conduct Did Not Result in the Premature or Improper Termination of a Felony Investigation.**

The PSR argues that Defendant Kamada's disclosure of confidential information caused (1) "Chacon and [Loya] to modify their behaviors, scrub text messages, and remove items of investigative value from a residence prior to the service of a search warrant;" and (2) Loya to "receive[] additional concessions from state prosecutors due to his knowledge of the origin of the leaked information."  (*Id.*)

Even assuming *arguendo* that these assertions are true, neither constitutes the "premature or improper ***termination*** of a felony investigation."  *See* Termination Definition, *Black's Law Dictionary* (11th ed. 2019), *available at* Westlaw (defining "termination" as "[t]he act of ending something" or "[t]he end of something in time or existence").  Neither the felony investigation involving Loya, nor the felony investigation involving Chacon, were terminated.  To the contrary, both men ultimately pleaded guilty to the offenses with which they were charged.

On February 13, 2020, Loya pleaded guilty to one count of conspiracy to possess with the intent to distribute a controlled substance and one count of conspiracy to launder money. (Ex. A, Loya Written Waiver and Guilty Plea.) He was sentenced to 10 years in Colorado state prison on June 17, 2020. (Ex. B, Loya Mittimus.) On November 21, 2019, Chacon pleaded guilty to an information charging him with destruction of records in a federal investigation, in violation of 18 U.S.C. § 1519. (Ex. C, Chacon Plea Agreement.) He is scheduled to be sentenced on August 27, 2021. Because Defendant Kamada's conduct did not result in the termination of any felony investigation, the PSR's inclusion of a three-offense-level enhancement for the "premature or improper termination of a felony investigation" is inappropriate.

### B. Defendant Kamada's Conduct Did Not Result in the Unnecessary Expenditure of Substantial Governmental or Court Resources.

The PSR's inclusion of a three-offense-level enhancement for "the unnecessary expenditure of substantial governmental or court resources" is likewise inappropriate in this case. In support of the enhancement, the PSR argues that Defendant Kamada's conduct (1) "caused the reassignment of Greeley Police Officers to assist in the investigation of leaked information;" and (2) "caused a significant burden on Colorado's Nineteenth Judicial District, to include assisting in the investigation of the defendant's conduct and covering his reassigned cases." (ECF No. 26, ¶ 45.) This argument fails for two reasons.

First, the PSR relies almost entirely on expenses incurred by government agencies in investigating and prosecuting Defendant Kamada's underlying obstruction offense. The Tenth Circuit, however, has directed that "expenses associated with the underlying [obstruction] offense should not form the basis of an upward adjustment." *See Sinclair*, 109 F.3d at 1539. In *Sinclair*, the presentence report argued that "the resources that the government expended in trying [the

defendant] on the instant perjury charge" constituted "the unnecessary expenditure of substantial government resources," thus triggering the enhancement. *Id.* The court disagreed. It reasoned that "the government's preparation for Mr. Sinclair's perjury trial . . . cannot be used to support the USSG § 2J3.1(b)(2) upward adjustment in the offense level." *Id.*; *see also Duran*, 41 F.3d at 546 ("Under the government's reading of the Guidelines, every perjury defendant would be subject to the enhancement. We . . . reject such a reading."). The same is true here. The PSR argues that Defendant Kamada's conduct resulted in "the unnecessary expenditure of substantial governmental or court resources" because government agencies were required to investigate Defendant Kamada's conduct to assist prosecutors in preparing this case for trial. Under binding Tenth Circuit precedent, such expenses cannot form the basis of an upward adjustment.

Second, the PSR improperly relies on expenses Colorado's Nineteenth Judicial District undertook in "covering [Defendant Kamada's] reassigned cases" after he resigned the bench. As an initial matter, the government has failed to meet its "burden of proving by a preponderance of the evidence any findings necessary to support a sentence enhancement" because the record contains no evidence of any *specific expenses* the Nineteenth Judicial District purportedly undertook in covering Defendant Kamada's reassigned cases. *See United States v. Gambino-Zavala*, 539 F.3d 1221, 1228 (10th Cir. 2008) (citing *United States v. Tindall*, 519 F.3d 1057, 1063 (10th Cir. 2008)). Even if such evidence were before this Court, it is far from clear whether the costs would qualify as "substantial" within the meaning of the Guidelines. *See Sinclair*, 109 F.3d at 1540 (defining "substantial" as "of ample or considerable amount, quantity, or dimensions," and noting that "[i]t is debatable whether . . . the prosecution's re-interviewing and recalling of [two witnesses] at the McMahon/Thomas trial involved a substantial expenditure of government or

court resources"). Finally, "[t]he language of the sentencing enhancement—mandating that the 'offense *resulted in* substantial interference with the administration of justice,' U.S.S.G. § 2J1.2(b)(2)—imposes a requirement of causality." *United States v. Waterman*, 755 F.3d 171, 175 (3rd Cir. 2014) (emphasis in original). "In determining whether the offense caused substantial interference, the timing of the offense in relation to the events which give rise to an assertion of substantial interference is a relevant factor for district courts to consider when applying the enhancement." *Id.*

Here, any costs the Nineteenth Judicial District undertook in covering Defendant Kamada's reassigned cases are too far removed from the obstruction offense to satisfy the Guidelines' causation requirement. (*See* ECF No. 26, ¶¶ 19, 80 (stating that Defendant Kamada's obstruction offense occurred on April 24, 2019 and that he resigned the bench approximately four months later, on August 21, 2019).) Indeed, costs associated with covering reassigned cases could arise any time a judge resigns the bench, irrespective of the reason.

Defendant Kamada's conduct did not result in the "premature or improper termination of a felony investigation" or the "the unnecessary expenditure of substantial governmental or court resources." Accordingly, Defendant Kamada objects to the PSR's inclusion of a three-offense-level enhancement for "substantial interference with the administration of justice."

### C. The "Substantial Interference" Enhancement is Independently Inapplicable Because It Only Applies to "More Serious Forms of Obstruction."

The commentary to U.S.S.G. § 2J1.2(b)(2) provides that, as a gate-keeping measure, the "substantial interference" enhancement is meant for obstruction offenses that constitute "*more serious forms* of obstruction." U.S.S.G. § 2J1.2, commentary (emphasis added). Generally, the enhancement is applied to conduct where the defendant's purpose is to obstruct. *See, e.g., United*

-6-

*States v. Houtar*, 980 F.3d 268 (2d Cir. 2020) (fleeing the country in defiance of a court order and engaging in international parental kidnapping); *United States v. Gray*, 692 F.3d 514 (6th Cir. 2012) (fabricating official reports regarding the death of an inmate and lying to investigators regarding the events leading to the death); *United States v. Atl. States Cast Iron Pipe Co.*, 627 F. Supp.2d 180 (D.N.J. 2009) (directing a witness to commit perjury and falsifying federal forms related to a gun sale in order to assist an individual under investigation); *United States v. Bishop*, 493 F. App'x 984 (10th Cir. 2012) (unpublished) (intentionally submitting falsified documents to the court as part of a sentencing proceeding).

Defendant Kamada's actions stand apart because it is undisputed (the government agrees) that he did not know, or even subjectively anticipate, that the sensitive information he was sharing with his friend/mentee would be passed on or would result in any form of obstruction. *See* Plea Agreement ¶ 26 (the parties agree that Kamada had no contact with Loya "concerning the investigation or anything else;" Kamada, moreover, "assumed Chacon *would not share* this sensitive information with [Loya] or anyone else. . . .") (emphasis added). Accordingly, the "substantial interference" enhancement is independently inapplicable because Defendant Kamada's conduct does not constitute the "*more serious forms*" of obstruction contemplated in § 2J1.2(b)(2).

II.  **THE PSR FAILS TO INCLUDE A MITIGATING ROLE ADJUSTMENT PURSUANT TO U.S.S.G. § 3B1.2(a).**

The Guidelines provide that, "[i]f the defendant was a minimal participant in any criminal activity," the offense level must be decreased by four levels. U.S.S.G. § 3B1.2(a). To qualify for the "minimal participant" mitigating role adjustment, (1) there must be "more than one participant involved in the offense;" and (2) the defendant must be "substantially less culpable than the

average participant in the criminal activity." *Id.* at § 3B1.2 cmt. n.2-3. Here, the PSR acknowledges that "the offense of conviction involved more than one participant," namely, Defendant Kamada and Geoffrey Chacon. (ECF No. 27, at A-2 (emphasis in original).) The only issue, then, is whether Defendant Kamada was "substantially less culpable" than Chacon. Because the evidence indicates that he was, the PSR should have included a four-offense-level decrease pursuant to U.S.S.G. § 3B1.2(a).

The record indicates that, although Defendant Kamada told his friend and mentee, Chacon, that Loya was the subject of a drug investigation, Defendant Kamada provided this information to Chacon solely to protect him so that he would stay away from Loya and not be subject to potential criminal prosecution. (ECF No. 26, ¶¶ 19–21 ("Defendant, who at the time served as a personal and professional mentor to Chacon, was worried that, because of Chacon's past questionable associations and bad decisions (including reported cocaine use when Chacon was in high school), Chacon might have fallen, or could fall, into bad habits, including drug use and adultery.").) Defendant Kamada received no benefit whatsoever by telling Chacon this information; further, he believed that Chacon, who he at the time viewed like a younger brother, would never share this information with Loya or anyone else. *See* Plea Agreement ¶ 26 (the parties agree that Kamada had no contact with Loya "concerning the investigation or anything else;" Kamada, moreover, "assumed Chacon *would not share* this sensitive information with [Loya] or anyone else. . . .") (emphasis added); ECF No. 17-1, at R-3 ("To [Defendant Kamada's] credit, he does not appear to have known that his friend was repeating the information to the person under investigation. Additionally, it appears [Defendant Kamada] was more so looking out for his friend, so he did not get caught up in the investigation.").

Defendant Kamada's conduct stands in stark contrast to that of Chacon. Contrary to what Defendant Kamada subjectively anticipated, Chacon in fact affirmatively (and, by definition, with the intent of obstructing the investigation) informed Loya of the pending investigation, causing him to change his pattern of criminal behavior and thereby interfering with the Weld County Drug Task Force ("WCDTF") investigation. Again, all parties agree that Defendant Kamada was entirely unaware of this. Plea Agreement ¶ 23 ("*Unbeknownst to the Defendant*, Chacon shared the information the Defendant provided to him concerning the investigation with [Loya]."). Defendant Kamada, thus, had no subjective knowledge that Chacon had provided this information to Loya. *Id.* ¶¶ 23, 25–26. Defendant Kamada assumed that Chacon "*would not* share this sensitive information with" Loya. *Id.* ¶ 26 (emphasis added). Further, Defendant Kamada learned of Chacon's conduct only *after* law enforcement contacted Kamada.

In determining whether a defendant is "substantially less culpable than the average participant," the Tenth Circuit has held that "***the inquiry must 'focus upon the defendant's knowledge or lack thereof*** concerning the scope and structure of the enterprise and of the activities of others involved in the offense.'" *United States v. Salazar-Samaniega*, 361 F.3d 1271, 1277 (10th Cir. 2004) (quoting *United States v. Calderon-Porras*, 911 F.2d 421, 423-24 (10th Cir. 1990) (emphasis added). Here, Defendant Kamada did not plan, manage, direct, understand, or even become contemporaneously aware of a single step Chacon and Loya took to interfere with the WCDTF investigation. Per the Plea Agreement between the Government and Defendant Kamada:

> *Unbeknownst to the Defendant,* Chacon shared the information the Defendant provided to him concerning the investigation with Drug Dealer . . . .
>
> *Unbeknownst to the Defendant, but known by the Government*, the information the Defendant provided Chacon . . . . caused Chacon and Drug Dealer to change their patterns of conduct and interfered with the WCDTF's investigation.

(ECF No. 26, ¶¶ 22, 24 (emphasis added).)  Although Defendant Kamada's sharing of sensitive information was, by his own admission, "inappropriate and reckless," he—unlike Chacon—undisputedly had no subjective intent to interfere with the then-ongoing criminal investigation of Loya.  (*Id.*)  Given Defendant Kamada's lack of knowledge "concerning the scope and structure of the enterprise and of the activities of others involved in the offense," he cannot be characterized as anything other than a "minimal participant in [the] criminal activity," as provided by Section 3B1.2(a), and should receive a four-level mitigating role adjustment decrease to the base offense level.  *See Salazar-Samaniega*, 361 F.3d at 1277; U.S.S.G. § 3B1.2, cmt. n.3(A), 3(C), and 4.

In failing to provide the "minimal participant" mitigating role adjustment, the PSR argues that "[Defendant Kamada] and Chacon share essentially the same level of culpability" because, although "Chacon . . . provided the information to the mutually known drug dealer," the "conduct would not have occurred without [Defendant Kamada's] actions."  (ECF No. 27, A-3.)  This "but-for" argument, however, overlooks both the Guidelines and Tenth Circuit precedent:

> Finding that a defendant performed an 'essential or indispensable role . . . is not determinative' of eligibility for [the minimal participant] adjustment.  The court instead must focus on whether the defendant 'is substantially less culpable than the average participant in the criminal activity.'

*United States v. Yurek*, 925 F.3d 423, 445 (10th Cir. 2019) (quoting U.S.S.G. § 3B1.2 cmt. n.3(C)). In other words, the mere fact that Defendant Kamada may have been the "but-for" cause of the chain of "criminal activity" (namely, the obstruction knowingly and intentionally engaged in by Chacon) does not disqualify him from receiving the "minimal participant" mitigating role adjustment.  Instead, per the Guidelines, the inquiry must focus on whether Defendant Kamada "is substantially less culpable" than Chacon.  U.S.S.G. § 3B1.2 cmt. n.3(A).  Because all parties agree

that Defendant Kamada had no subjective intent to interfere with the then-ongoing criminal investigation of Loya, Defendant Kamada is substantially less culpable than Chacon. This is supported by the government's own charging decisions, as Chacon was charged with and pleaded guilty to a 20-year felony (18 U.S.C. § 1519), while Defendant Kamada was charged with and pleaded guilty to a five-year felony (18 U.S.C. § 1505). *Compare* Plea Agreement *with* Ex. C. Therefore, the PSR should have included a four-offense-level decrease pursuant to U.S.S.G. § 3B1.2(a).

### III. THE PSR ERRED IN ITS CALCULATION OF THE RECOMMENDED GUIDELINES RANGE.

Given the defects outlined above, Defendant Kamada objects to the PSR's calculation of the recommended Guidelines range. Once the enhancement for "substantial interference with the administration of justice" is removed, Defendant Kamada's offense level should be decreased by three points, from 16 to 13. *See* U.S.S.G. § 2J1.2(b)(2). Similarly, once and the "minimal participant" mitigating role adjustment is applied, Defendant Kamada's offense level should further be decreased by four points, from 13 to nine. *See* U.S.S.G. § 3B1.2(a).

The PSR correctly has found that Defendant Kamada's criminal history score is zero, which places him in criminal history category I. (ECF No. 26, ¶ 57.)

Because Defendant Kamada's offense level is nine and because he falls within criminal history category I, the recommended Guidelines range should be four to 10 months. *See* Sentencing Table. This puts Defendant Kamada within Zone B, making him eligible for a sentence of probation in combination with home detention pursuant to U.S.S.G. § 5B1.1(a)(2). *See id.*

-12-

## IV.    CONCLUSION

For the reasons stated above, Defendant Kamada objects to the PSR for improperly including a three-offense-level enhancement for substantial interference with the administration of justice pursuant to U.S.S.G. § 2J1.2(b)(2). Defendant Kamada further objects to the PSR for failure to include a mitigating role adjustment pursuant to U.S.S.G. § 3B1.2(a). Given these errors, Defendant Kamada objects to the PSR's calculation of the recommended Guidelines range.

DATED this 25th day of June, 2021.

Respectfully submitted,

**PERKINS COIE LLP**

By: *s/ Michael L. Bender*
    Michael L. Bender
    MBender@perkinscoie.com
    T. Markus Funk
    MFunk@perkinscoie.com
    1900 Sixteenth Street, Suite 1400
    Denver, CO 80202-5255
    Telephone: 303.291.2300
    Facsimile: 303.291.2400

**Attorneys for Defendant
RYAN KAMADA**

-13-

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

- **Bryan David Fields**
  bryan.fields3@usdoj.gov

- **John Patrick Taddei**
  john.taddei@usdoj.gov

By: *s/ Michael L. Bender*
    Michael L. Bender
    Perkins Coie LLP
    1900 Sixteenth Street, Suite 1400
    Denver, CO  80202-5255
    Telephone:  303.291.2300
    Facsimile:  303.291.2400
    MBender@perkinscoie.com

**Attorneys for Defendant**
**RYAN KAMADA**