IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:20-cr-00174-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **RYAN KAMADA,**

    Defendant.

## GOVERNMENT'S SENTENCING STATEMENT

    The defendant was a Colorado state court judge who leaked the existence of a search warrant to help his close friend avoid possible criminal exposure. His actions upended a complex and months-long investigation into a large-scale cocaine trafficking organization. The defendant's offense represented a serious abuse of power and violation of the trust that the people of Colorado placed in him. Furthermore, it was not an isolated incident. By virtue of his position, the defendant also had access to confidential records about the people who appeared before him in court, including outstanding warrants, divorce proceedings, and child custody disputes. As described more fully below, the defendant regularly shared this deeply personal information with his friends for the perverse purpose of their collective entertainment.

    As part of a plea agreement in which the government agreed to pursue no additional counts, the defendant pleaded guilty on June 30, 2020, to an Information

1

charging him with obstruction of proceedings before a department or agency of the United States, in violation of 18 U.S.C. § 1505. ECF No. 14. Sentencing in this matter is set for July 28, 2021 at 9:30 a.m.

In advance of the sentencing hearing, the United States of America, by Matthew T. Kirsch, Acting United States Attorney for the District of Colorado, through Bryan David Fields, Assistant United States Attorney, and by Corey R. Amundson, Chief of the Justice Department's Public Integrity Section, through John P. Taddei, Trial Attorney, hereby files this sentencing statement pursuant to D.COLO.L.CrR 32.1 identifying and analyzing the relevant sentencing factors. The government recommends a sentence of 21 months' imprisonment (the "Recommended Sentence"), which is at the low end of the advisory Sentencing Guidelines range in this case. For the reasons set forth below, the Recommended Sentence is sufficient but not greater than necessary to satisfy all of the factors the Court must consider under 18 U.S.C. § 3553(a).

## I. ALL OF THE FACTORS THAT THE COURT MUST CONSIDER SUPPORT THE RECOMMENDED SENTENCE

In fashioning a sentence, the Court must address each of the factors set forth at 18 U.S.C. § 3553(a), including the kinds of sentences and the range established by the United States Sentencing Guidelines (the "Guidelines"); the nature, circumstances, and seriousness of the offense; the history and characteristics of the defendant; the need to promote respect for the law; the need to justly punish the offense; and the need to adequately deter criminal conduct and protect the public from further crimes. These factors support the Recommended Sentence of 21

2

months' imprisonment, which is at the low end of the Guidelines range.

### A.    The Guidelines Support the Recommended Sentence (18 U.S.C. § 3553(a)(4)(A))

One of the factors the Court must consider is the range recommended by the Guidelines. As estimated in the plea agreement (ECF No. 14 ¶ 28), the base offense level is 14, pursuant to U.S.S.G. § 2J1.2(a), and the defendant should receive a two-level enhancement for abusing his judicial office, pursuant to U.S.S.G. § 3B1.3. Over the defendant's objection (ECF No. 24), the Probation Office also recommends a three-level enhancement for substantial interference with the administration of justice, pursuant to U.S.S.G. § 2J1.2(b)(2). This enhancement properly applies here for the reasons set forth in the Probation Office's Addendum to the PSR (ECF No. 27 at 1-2) and the government's objections to the draft PSR (ECF No. 20 at 1-7).[1] With a three-level reduction for acceptance of responsibility the defendant's total offense level is 16.

The defendant has minimal criminal history, with one conviction for driving while impaired when he was 22 years old which puts him in Criminal History Category I. In that category, an offense level of 16 yields a recommended Guidelines Range of 21-27 months' imprisonment. At this offense level, the

---

[1] On June 25, 2021, the defendant raised supplemental objections to the PSR, which the Court struck as untimely. ECF Nos. 28, 29. The Court also denied the defendant's motion for reconsideration for lack of good cause shown. ECF Nos. 30, 32. If the defendant reraises the issues and arguments he identified in his supplemental objections in his sentencing statement, any related filings, or at sentencing, the government will address them in a later response as necessary and appropriate.

Guidelines state that the minimum term shall be satisfied by a sentence of imprisonment. U.S.S.G. § 5C1.1(f). Therefore, a term of 21 months' imprisonment would be consistent with the Guidelines.

Furthermore, the Guidelines range provides a useful framework for evaluating all of the other factors together because it provides a "rough approximation" of sentences that will achieve all of § 3553's objectives. *Rita v. United States*, 551 U.S. 338, 350 (2007); *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006). As set forth in more detail below, this conclusion is not an abstract or academic one: the particular facts of this case, viewed through the prism of § 3553(a), fully support a within-Guidelines sentence.

### B. The Nature and Circumstances of the Offense and History and Characteristics of the Defendant Support the Recommended Sentence (§ 3553(a)(1))

The nature and circumstances of the offense, coupled with the defendant's history and characteristics, weigh in favor of a meaningful, within-Guidelines term of imprisonment. The defendant's crime was serious in that the defendant was a sitting district court judge who disclosed highly sensitive details of a search warrant to his best friend, Geoffrey Chacon, in an intentional effort to obstruct a criminal investigation by protecting Chacon from potential criminal exposure. The defendant admitted that he should have foreseen that Chacon would share the information with the target of the search warrant, a significant international drug trafficker that the defendant and Chacon had known since high school (the "Drug Dealer"). ECF No. 14 at 6-8, 12. The defendant's conduct caused the premature

4

and improper termination of a felony investigation into the Drug Dealer, his confederates, and his customers, including Chacon, as well as the unnecessary expenditure of substantial law enforcement and court resources. *Id.* at 11-12; *see* ECF No. 20 at 2-6.

The defendant's conduct had additional serious consequences. In letters submitted to the Court, Mark Jones, Chief of the Greeley Police Department, and Steve Black, Commander of the Weld County Drug Task Force ("WCDTF"), explained that the Drug Dealer's premature notice of the law enforcement investigation put the safety of law enforcement officers at risk. They also described tangible negative effects that the defendant's disclosure of the search warrant information had on the course of the investigation. Furthermore, James Hartmann, Chief Judge of Colorado's Nineteenth Judicial District—the court on which the defendant was serving when he leaked the search warrant information—submitted a letter detailing the substantial negative effects that the defendant's offense conduct had, and continues to have, on the court's operations and reputation. The statement of facts, the facts included without objection in the PSR, and the letters submitted to the Court paint a vivid picture of the deleterious effects that the defendant's criminal conduct had on not just a particular criminal investigation, but the very institutions that the defendant had sworn to protect and serve.

All of this damage was eminently foreseeable to the defendant. The defendant was very aware of Drug Dealer's reputation as a "scary guy" and potentially dangerous narcotics trafficker, as well as Chacon's ongoing association

5

with him and those in his criminal circle.  ECF No. 14 at 6-8.  One January 2019 text message exchange between the defendant and Chacon about an altercation between Drug Dealer and a second drug dealer is particularly noteworthy.   Chacon told the defendant that the two drug dealers "got into a fight" and that the second drug dealer "was all drunk n high on coke."  *Id.* ¶ 17   The defendant responded that the second drug dealer "[n]eeds to grow up" and "[i]f he wants to play big boy stuff, then he needs to be a big boy."  *Id.*  Chacon responded, "Yeah bro, lol he is a fuckin idiot man.  He [the second drug dealer] owes him [Drug Dealer] Like 15 g's worth of cash."  *Id.*  The defendant said, "One thing I've learned.  [The second drug dealer] is not a good criminal.  He needs a normal job."  *Id.*  Chacon responded that the second drug dealer "is possibly the stupidest drug dealer I've seen/heard of."  *Id.*

  This text message exchange demonstrates the defendant's cavalier attitude toward the criminal activities of people he personally knew, particularly Drug Dealer.  The defendant was a judge who had just received information about a physical altercation between two drug dealers over a $15,000 drug-related debt.  The defendant did not show any concern or acknowledgement that Chacon or the defendant should provide this information to law enforcement.  Instead, he and Chacon joked that the second drug dealer was "not a good criminal."  The defendant went so far as to suggest that the second drug dealer needed to change his behavior if he wanted to be a more successful drug dealer—"[i]f he wants to play big boy stuff, then he needs to be a big boy."

  Other relevant conduct further demonstrates that the defendant's abuse of

6

power to help his friend Chacon was not an isolated lapse in judgment. It fit a pattern whereby the defendant improperly leveraged his position as a judge to share court records and the personal information of litigants with his friends. Numerous text message chains between the defendant and his friends revealed staggering breaches of confidentiality. They also revealed that the defendant primarily shared this information with his friends for his and his friends' amusement and entertainment.

In addition to the conduct underlying the defendant's offense of conviction, he improperly disclosed information related to warrants on several other occasions, including the following:[2]

- The defendant disclosed details of a child custody case pending before him to a friend. The defendant and the friend seemed to personally know the litigants. The defendant told his friend that he was going to grant custody to the children's grandmother. The friend asked the defendant, "Was there a warrant out for Mom?" The defendant responded, "Didn't see a warrant but didn't check hard."

- A friend asked the defendant about the arrest of someone they personally knew. The defendant responded, "I'll look here in about 10. If it's federal I won't see." The friend clarified that the person was being arraigned in Weld County and that the person had texted the friend earlier to say "he was sick

---

[2] The government intends to offer into evidence at the sentencing hearing each of the exchanges quoted in this memorandum.

and wasn't going [to] make it in today." The defendant replied, "Sick of the dick he was slaying in jail." The friend laughed in response. The defendant said, "Doesn't look like it's been uploaded yet. It will be by the end of the day." The friend repeatedly asked for updates and the defendant told him he would check the warrant database that night. The friend promised the defendant "it'll stay between the two of us." Later, the friend wrote, "Fuck bud it was a federal case." The defendant responded, "Yeah I was gonna say. I don't see shit."

- In a text exchange with eight friends, the defendant wrote, "So I was reviewing a warrant today on this man that beat the shit out of his wife he tells the cops that she attacked him and that he is a former wrestler so he checked her oil by sticking his finger in her ass to get her off him. Lol!!!" Two of the defendant's friends laughed in response.

On several occasions, the defendant sent photographs of his court-issued computer or workspace to friends. The photographs revealed confidential court documents and communications.

The defendant invited his friends to comment on cases and issues pending before him, frequently describing the litigants in profane terms and making jokes at their expense:

- In a text exchange with eight friends, the defendant commented on a child custody case, stating, in reference to the child's mother, that he was "gonna let that bitch have it." One friend responded, "Clickety clack mother fuckers.

8

Baby mama going down!" The defendant responded, "That bitch is gonna get the forced sobriety. Aka jail."

- In a text exchange with eight friends, the defendant sent a photograph of a tattooed man and a child, commenting, "Check out the dad in my trial today." The defendant sent a separate group of ten people the same photograph, commenting, "Lovely dad I had in my custody trial today." The next day, the defendant sent the photograph to yet another group of four people, joking to one of them, "Hey [friend's name redacted] I had your brother in law in court yesterday."

- In a text exchange with three friends, the defendant sent the caption of a divorce petition, commenting, "I am going to grant this today so she is free tomorrow night [friend's name redacted]." In an apparent reference to the litigants' marital property, the defendant added, "Sorry [friend's name redacted]. [The husband] is keep the Mercedes AMG." The friend responded, "Hahaha. That's ok. She can buy me something else. Just get a first date set up for me."

- On several occasions, the defendant engaged in profane conversations about female lawyers who appeared before him in court. In one exchange, the defendant referred to a particular female lawyer as a "bitch" and "a know it all." One friend on the text chain wrote, "Does she know how to take it in the butt." The defendant responded, "First case she has in front of my [sic] I'm going to humble her." In another exchange, the defendant told a group of

9

>eight people that he had a "[l]ong day dealing with this cunt bitch for a lawyer" and sent several texts disparaging her performance in court.

These messages show that the defendant repeatedly disclosed some of the most intimate and personal details about the litigants who appeared before him to his friends.  He joked and laughed about their struggles.  He used repugnant language to describe them and the advocates who appeared on their behalf in his courtroom.  The defendant's actions reflect a remarkably unserious attitude toward the importance of his judicial position.  They demonstrate a profound lack of respect for the immense influence he had over the lives of the citizens who came before him for careful consideration and just resolution of their cases and the power he wielded to decide what happened to their property, marriages, liberty, and even their children.

There is nothing in the defendant's background that would mitigate, excuse, or explain his conduct.  He had a comfortable and peaceful upbringing anchored by parents who provided him with a loving and supportive home free of abuse or neglect.  The defendant achieved great academic and professional success, graduating from college and law school, securing immediate employment at a law firm that would eventually bear his name, and becoming a judge on the Weld County Court and, later, Colorado's Nineteenth Judicial Circuit.  In adulthood, he has a stable family life and  considerable financial resources.  In sum, the defendant has had every opportunity that life could have presented him.  He has experienced no hardships that could even arguably justify or explain his criminal conduct.  Quite

10

simply, he chose to use his considerable advantages and opportunities to engage in conduct that was selfish, corrupt, and criminal. This factor weighs in favor of a within-Guidelines sentence.

### C. The Recommended Sentence Would Promote Respect for the Law and Justly Punish the Offense (18 U.S.C. § 3553(a)(2)(A))

The defendant's conduct demonstrated a profound disrespect for the law. The defendant swore an oath to uphold the Constitutions and laws of the United States and State of Colorado and to faithfully perform the duties that the people had entrusted to him. He repeatedly violated this oath. He leveraged his weighty position in the American legal system to corruptly insulate his best friend from potential law enforcement scrutiny. As Chief Jones wrote, "The fact that a district court judge so blatantly violated his sworn oath demands that justice be served not only for the individuals impacted by his decision, but to try and preserve the credibility of the criminal justice system." Similarly, Chief Judge Hartmann wrote, "Our bench will be working for a long time, I'm afraid, to restore the faith and confidence of law enforcement that their investigations won't be jeopardized by a judicial officer when they apply for a warrant." Likewise, Judge Shannon Lyons of the Nineteenth Judicial Circuit wrote, "We must now spend the rest of our judicial careers earning back the trust [the defendant] lost." A sentence of 21 months' imprisonment would remind the defendant, and others, that the law deserves respect.

The Recommended Sentence would also be a just one. The defendant is an educated and successful person with a privileged background who served at the top

11

of his profession in an important position of public trust.  He swore to uphold and enforce the law.  Instead the defendant leveraged his position in an effort to insulate his best friend from law enforcement.  The Recommended Sentence is proportional to his conduct.

### D. The Recommended Sentence Would Afford Adequate Deterrence (18 U.S.C. § 3553(a)(2)(B))

General deterrence supports the Recommend Sentence.  It is perhaps redundant to say that judges are the backbone of the judicial system.  They are among the most important actors in our democratic system of government.  The public must be able to trust that judges will act based on the law and what they believe to be the best interests of society, not based on what they believe is best for themselves and their friends.

Moreover, "[d]efendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime can therefore be affected and reduced with serious punishment."  *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006).  In this case, the defendant's crime was not based on the prospect of financial gain.  But it was based on what he stood to lose.  The defendant calculated that the reward of protecting his best friend from criminal exposure outweighed the risk of harming an ongoing criminal investigation, placing law enforcement officers in danger, tarnishing the reputation of his court, and damaging the public's faith in the impartiality of the justice system.  It is important for this Court to send the right message about the seriousness of the offense to deter other public officials who might consider engaging in similar behavior.  A meaningful term of imprisonment

12

would accomplish that goal.

## II. CONCLUSION

The defendant should receive a sentence that advances the purposes of criminal sentencing set forth in § 3553(a). For the reasons set forth above, the Recommended Sentence of 21 months' imprisonment does so without being greater than necessary.

Respectfully submitted this 14th day of July, 2021.

|  |  |
|---|---|
| MATTHEW T. KIRSCH<br>Acting United States Attorney | COREY R. AMUNDSON<br>Chief |
| By: *s/Bryan David Fields*<br>Bryan David Fields<br>Assistant U.S. Attorney<br>U.S. Attorney's Office<br>1801 California St., Ste. 1600<br>Denver, CO 80202<br>Telephone: 303-454-0200<br>Fax: 303-454-0406<br>E-mail: Bryan.Fields3@usdoj.gov<br>Attorney for Government | By: s/*John P. Taddei*<br>John P. Taddei<br>Trial Attorney<br>U.S. Department of Justice<br>Public Integrity Section<br>1301 New York Ave. NW, Ste. 1000<br>Washington, DC 20530<br>Telephone: 202-514-1412<br>Fax: 202-514-3003<br>Email: John.Taddei@usdoj.gov<br>Attorney for Government |

## CERTIFICATE OF SERVICE

I certify that on this 14th day of July, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case

s/ *Bryan David Fields*
BRYAN DAVID FIELDS
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Bryan.Fields3@usdoj.gov