## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:20-cr-00174-WJM

UNITED STATES OF AMERICA,

  Plaintiff,

v.

RYAN KAMADA,

  Defendant.

---

### DEFENDANT'S RESPONSE TO GOVERNMENT'S SENTENCING STATEMENT

  Pursuant to this Court's Order dated July 16, 2021 (ECF No. 39), Defendant Ryan Kamada hereby responds to the government's sentencing statement (ECF No. 34). For at least four reasons, the Court should reject the government's recommended sentence, which is greater than necessary to comply with the goals of sentencing in 18 U.S.C. § 3553(a).

  *First*, the government's recommended sentence is based on an incorrect calculation of the Guidelines range. The government's proposed Guidelines range improperly includes an enhancement for substantial interference with the administration of justice. It also fails to include a mitigating role adjustment. Once these adjustments are factored in, the Guidelines range should be 4 to 10 months, and Ryan should fall within Zone B, making him eligible for a sentence of probation in combination with home detention.

  *Second*, the facts of this case involve unique circumstances that justify a downward variance from the Guidelines. Specifically, it is undisputed that Ryan did not act with the purpose of obstructing justice; did not act with the intent to confer any material benefit on himself; and did not subjectively foresee nor expect that, by warning his best friend to stay away from a drug dealer,

he would obstruct an investigation. To the extent a similar case exists, we are not aware of it. But instead of focusing on the crime with which Ryan was charged and to which he pled guilty, the government's sentencing statement devotes five pages to admittedly embarrassing and regrettable personal text messages between friends that are wholly unrelated to the charged conduct. In fact, Ryan already has been punished for the text messages by voluntarily stipulating to both public censure and disbarment; indeed, Ryan's disbarment order specifically cites violations of Colorado Judicial Conduct Rules 2.9 and 2.10, which Ryan violated because of his text messages. Ryan should be sentenced for the crime of obstruction, not extraneous text messages that, although highly improper, do not constitute a crime.

*Third*, the government's sentencing statement fails to consider the significant reputational punishment and humiliation Ryan already has received for his crime.

*Fourth*, given the massive publicity Ryan's fall from grace has generated, general deterrence does not support the government's recommended sentence.

## I.   THE GOVERNMENT'S RECOMMENDED SENTENCE IS BASED ON AN INCORRECT CALCULATION OF THE GUIDELINES RANGE.

The U.S. Supreme Court has held that the "Guidelines are not mandatory;" that they are "only one of the factors to consider when imposing a sentence;" and that "§ 3553(a)(3) directs the judge to consider sentences other than imprisonment." *Gall v. United States*, 552 U.S. 38, 59 (2007); *see also United States v. Walker*, 252 F. Supp. 3d 1269, 1301 (D. Utah 2017) ("The Guidelines remain in tension with the admonition that the sentencing court must consider each case as unique and sentence the individual who appears before it on the day of sentencing, and not merely the crime convicted."). The government's proposed sentence, however, relies entirely upon a mechanical calculation and application of the Guidelines range. (*See* ECF No. 34, 3-4 (agreeing

with the Probation Office's second calculation of the Guidelines range, but proposing a sentence significantly above that recommended by the Probation Office).)

In addition to narrow reliance on the Guidelines without sufficient accounting for the § 3553(a) factors, the government also errs in its calculation of the recommended Guidelines range. First, the government improperly includes a three-level enhancement for substantial interference with the administration of justice pursuant to U.S.S.G. § 2J1.2(b)(2). Second, it fails to include a mitigating role adjustment pursuant to U.S.S.G. § 3B1.2(a). Once these adjustments are factored in, the offense level should be 9, which would yield a Guidelines range of 4 to 10 months.

We recognize and respect that the Court has struck the arguments below as untimely. (ECF No. 29.) However, we raise these arguments again now that the government has independently advocated for an offense level of 16 (including a three-level enhancement for substantial interference with the administration of justice) in its sentencing statement. (*See* ECF No. 34, 3.)

### A.   An Enhancement for Substantial Interference with the Administration of Justice is Not Justified.

The government argues that a three-level enhancement for substantial interference with the administration of justice pursuant to U.S.S.G. § 2J1.2(b)(2) is appropriate "for the reasons set forth in the Probation Office's Addendum to the PSR (ECF No. 27 at 1-2) and the government's objections to the draft PSR (ECF No. 20 at 1-7)." (ECF No. 34, 3.) These filings argue that the enhancement is warranted because "the leak resulted in the premature or improper termination of a felony investigation and/or unnecessary expenditure of substantial governmental or court resources." (ECF No. 27, 1; ECF No. 20, 2.) Ryan's conduct, however, did not result in either.

The enhancement is independently inapplicable because it only applies to obstruction offenses that constitute "*more serious forms* of obstruction," unlike Ryan's conduct here.

-3-

> 1.  *Ryan's Conduct Did Not Result in the Improper Termination of a Felony Investigation.*

The government argues that Ryan's disclosure of confidential information resulted in the improper termination of a felony investigation because it caused (1) "Chacon and [Loya] to modify their behaviors, scrub text messages, and remove items of investigative value from a residence prior to the service of a search warrant;" and (2) Loya to "receive[] additional concessions from state prosecutors due to his knowledge of the origin of the leaked information." (*Id.*)

Even assuming *arguendo* that these assertions are true (only the government has this evidence, so Ryan cannot independently verify it), neither constitutes the "premature or improper **termination** of a felony investigation." *See* Termination Definition, *Black's Law Dictionary* (11th ed. 2019), *available at* Westlaw (defining "termination" as "[t]he act of ending something" or "[t]he end of something in time or existence"). Neither the felony investigation involving Loya, nor the felony investigation involving Chacon, were "terminated." To the contrary, both men ultimately pled guilty to the offenses with which they were charged.

On February 13, 2020, Loya pled guilty to one count of conspiracy to possess with the intent to distribute a controlled substance and one count of conspiracy to launder money. He was sentenced to 10 years in Colorado state prison on June 17, 2020. On November 21, 2019, Chacon pled guilty to an information charging him with destruction of records in a federal investigation, in violation of 18 U.S.C. § 1519, which carries a maximum sentence of 20 years' imprisonment. He is scheduled to be sentenced on August 27, 2021. Because Ryan's conduct did not result in the termination of any felony investigation, the inclusion of a three-offense-level enhancement for the "premature or improper termination of a felony investigation" is inappropriate.

    2.    *Ryan's Conduct Did Not Result in the Unnecessary Expenditure of Substantial Governmental or Court Resources.*

In the alternative, the government argues that a three-level enhancement is appropriate because Ryan's conduct resulted in "the unnecessary expenditure of substantial governmental or court resources." Per the government, Ryan's conduct (1) "caused the reassignment of Greeley Police Officers to assist in the investigation of leaked information;" and (2) "caused a significant burden on Colorado's Nineteenth Judicial District, to include assisting in the investigation of the defendant's conduct and covering his reassigned cases." (ECF No. 27, 1; ECF No. 20, 4-6.) This argument fails for two reasons.

First, the government relies almost entirely on expenses incurred by government agencies in investigating and prosecuting Ryan's underlying obstruction offense. The Tenth Circuit, however, has directed that "expenses associated with the underlying [obstruction] offense should not form the basis of an upward adjustment." *See United States v. Sinclair*, 109 F.3d 1527, 1539 (10th Cir. 1997). In *Sinclair*, the government argued that "the resources [it] expended in trying [the defendant] on the instant perjury charge" constituted "the unnecessary expenditure of substantial government resources," thus triggering the enhancement. *Id.* The court disagreed. It reasoned that "the government's preparation for Mr. Sinclair's perjury trial . . . cannot be used to support the USSG § 2J3.1(b)(2) upward adjustment in the offense level." *Id.*; *see also United States v. Duran*, 41 F.3d 540, 546 (9th Cir. 1994) ("Under the government's reading of the Guidelines, every perjury defendant would be subject to the enhancement. We . . . reject such a reading."). The same is true here. The government argues that Ryan's conduct resulted in "the unnecessary expenditure of substantial governmental or court resources" because government agencies were

required to investigate Ryan's conduct to assist prosecutors in preparing this case for trial. Under binding Tenth Circuit precedent, such expenses cannot form the basis of an upward adjustment.

Second, the government improperly relies on expenses Colorado's Nineteenth Judicial District undertook in "covering [Ryan's] reassigned cases" after he resigned the bench. As an initial matter, the government has failed to meet its "burden of proving by a preponderance of the evidence any findings necessary to support a sentence enhancement," because the record contains no evidence of any *specific expenses* the Nineteenth Judicial District purportedly undertook in covering Ryan's reassigned cases. *See United States v. Gambino-Zavala*, 539 F.3d 1221, 1228 (10th Cir. 2008) (citing *United States v. Tindall*, 519 F.3d 1057, 1063 (10th Cir. 2008)). Even if such evidence were before this Court, it is far from clear whether the costs would qualify as "substantial" within the meaning of the Guidelines. *See Sinclair*, 109 F.3d at 1540 (defining "substantial" as "of ample or considerable amount, quantity, or dimensions," and noting that "[i]t is debatable whether . . . the prosecution's re-interviewing and recalling of [two witnesses] at the McMahon/Thomas trial involved a substantial expenditure of government or court resources"). Finally, "[t]he language of the sentencing enhancement—mandating that the 'offense *resulted in* substantial interference with the administration of justice,' U.S.S.G. § 2J1.2(b)(2)—imposes a requirement of causality." *United States v. Waterman*, 755 F.3d 171, 175 (3rd Cir. 2014) (emphasis in original). "In determining whether the offense caused substantial interference, the timing of the offense in relation to the events which give rise to an assertion of substantial interference is a relevant factor for district courts to consider when applying the enhancement." *Id.*

Here, any costs the Nineteenth Judicial District undertook in covering Ryan's reassigned cases are too far removed from the obstruction offense to satisfy the Guidelines' causation

requirement. (*See* ECF No. 26, ¶¶ 19, 80 (stating that Ryan's obstruction offense occurred on April 24, 2019 and that he resigned the bench approximately four months later, on August 21, 2019).) Indeed, costs associated with covering reassigned cases could arise any time a judge resigns the bench, irrespective of the reason.

Ryan's conduct did not result in the "premature or improper termination of a felony investigation" or the "the unnecessary expenditure of substantial governmental or court resources." Accordingly, a three-level "substantial interference" enhancement is inappropriate.

> 3.    *The "Substantial Interference Enhancement is Independently Inapplicable Because It Only Applies to "More Serious Forms of Obstruction."*

The commentary to U.S.S.G. § 2J1.2(b)(2) provides that, as a gate-keeping measure, the "substantial interference" enhancement is meant for obstruction offenses that constitute "*more serious forms* of obstruction." U.S.S.G. § 2J1.2, commentary (emphasis added). In almost all cases, the enhancement is applied to conduct where the defendant's *very purpose of engaging in the conduct* is to obstruct.[1] Ryan's actions stand apart because it is undisputed (the government agrees) that he did not know, or even *subjectively anticipate*, that the sensitive information he was sharing with his friend/mentee would be passed on or would result in any form of obstruction. *See* Plea Agreement ¶ 26 (the parties agree that Ryan had no contact with Loya "concerning the investigation or anything else;" Ryan, moreover, "assumed Chacon **would not share** this sensitive

---

[1] *See, e.g., United States v. Houtar*, 980 F.3d 268 (2d Cir. 2020) (fleeing the country in defiance of a court order and engaging in international parental kidnapping); *United States v. Gray*, 692 F.3d 514 (6th Cir. 2012) (fabricating official reports regarding the death of an inmate and lying to investigators regarding the events leading to the death); *United States v. Atl. States Cast Iron Pipe Co.*, 627 F. Supp. 2d 180 (D.N.J. 2009) (directing a witness to commit perjury and falsifying federal forms related to a gun sale in order to assist an individual under investigation); *United States v. Bishop*, 493 F. App'x 984 (10th Cir. 2012) (unpublished) (intentionally submitting falsified documents to the court as part of a sentencing proceeding).

information with [Loya] or anyone else. . . .") (emphasis added). Accordingly, the "substantial interference" enhancement is independently inapplicable because Ryan's conduct does not constitute the "*more serious forms*" of obstruction contemplated in § 2J1.2(b)(2).

**B.    The Government's Proposed Guidelines Range Should Have Included a Mitigating Role Adjustment Pursuant to U.S.S.G. § 3B1.2(a).**

The Guidelines provide that, "[i]f the defendant was a minimal participant in any criminal activity," the offense level must be decreased by four levels. U.S.S.G. § 3B1.2(a). To qualify for the "minimal participant" mitigating role adjustment, (1) there must be "more than one participant involved in the offense;" and (2) the defendant must be "substantially less culpable than the average participant in the criminal activity." *Id.* at § 3B1.2 cmt. n.2-3. Here, the PSR, upon which the government relies, acknowledges that "the offense of conviction involved more than one participant," namely, Ryan and Geoffrey Chacon. (ECF No. 27 at 2l.) The only issue, then, is whether Ryan (who pled guilty to a five-year felony) was "substantially less culpable" than Chacon (who pled guilty to a 20-year felony). Because the evidence indicates that he was substantially less culpable, Ryan should receive a four-offense-level decrease pursuant to U.S.S.G. § 3B1.2(a).

The record indicates that, although Ryan told his best friend and mentee, Chacon, that Loya was the subject of a drug investigation, Ryan provided this information to Chacon solely to protect him (Chacon) so that he would stay away from Loya and not be subject to potential criminal prosecution, adultery, or other embarrassment. Plea Agreement ¶ 21 ("Defendant, who at the time served as a personal and professional mentor to Chacon, was worried that, because of Chacon's past questionable associations and bad decisions (including reported cocaine use when Chacon was in high school), Chacon might have fallen, or could fall, into bad habits, including drug use and adultery.").) Ryan received no benefit whatsoever by telling Chacon this information; further,

he believed that Chacon would never share this information with Loya or anyone else. *See id.* ¶ 26; ECF No. 17-1, at R-3 ("To [Ryan's] credit, he does not appear to have known that his friend was repeating the information to the person under investigation.").

Ryan's conduct, though of course serious, stands in stark contrast to that of Chacon. Contrary to what Ryan subjectively anticipated, Chacon in fact affirmatively (and with the intent of obstructing the investigation) informed Loya of the pending investigation, causing him to change his pattern of criminal behavior and thereby interfering with the Weld County Drug Task Force ("WCDTF") investigation. Again, all parties agree that Ryan was entirely unaware of this. Plea Agreement ¶ 23 ("*Unbeknownst to the Defendant*, Chacon shared the information the Defendant provided to him concerning the investigation with [Loya]."). Ryan, thus, had no subjective knowledge that Chacon had provided this information to Loya. *Id.* ¶¶ 23, 25–26. Ryan assumed that Chacon "*would not* share this sensitive information with" Loya.  *Id.* ¶ 26 (emphasis added). Further, Ryan learned of Chacon's conduct only *after* law enforcement contacted him.

In determining whether a defendant is "substantially less culpable than the average participant," the Tenth Circuit has held that "***the inquiry must 'focus upon the defendant's knowledge or lack thereof*** concerning the scope and structure of the enterprise and of the activities of others involved in the offense.'" *United States v. Salazar-Samaniega*, 361 F.3d 1271, 1277 (10th Cir. 2004) (quoting *United States v. Calderon-Porras*, 911 F.2d 421, 423-24 (10th Cir. 1990) (emphasis added). Here, Ryan did not plan, manage, direct, understand, or even become contemporaneously aware of a single step Chacon and Loya took to interfere with the WCDTF investigation. Per the Plea Agreement:

> *Unbeknownst to the Defendant,* Chacon shared the information the Defendant provided to him concerning the investigation with [Loya] . . . .

> *Unbeknownst to the Defendant, but known by the Government*, the information the Defendant provided Chacon . . . . caused Chacon and [Loya] to change their patterns of conduct and interfered with the WCDTF's investigation.

Plea Agreement ¶¶ 23, 25 (emphasis added).) Although Ryan's sharing of sensitive information was, by his own admission, "inappropriate and reckless," he—unlike Chacon—undisputedly had no subjective intent to interfere with the then-ongoing criminal investigation of Loya. (*Id.*) Given Ryan's lack of knowledge "concerning the scope and structure of the enterprise and of the activities of others involved in the offense," he cannot be characterized as anything other than a "minimal participant in [the] criminal activity," as provided by Section 3B1.2(a), and should receive a four-level mitigating role adjustment decrease to the base offense level. *See Salazar-Samaniega*, 361 F.3d at 1277; U.S.S.G. § 3B1.2, cmt. n.3(A), 3(C), and 4.

In arguing that the "minimal participant" mitigating role adjustment is not justified, the government has argued that Ryan "alone is responsible for Chacon's changes in behavior;" therefore, Ryan "is just as culpable as Chacon for [Loya's] changes in behavior and their obstructive effects on the WCDTF investigation." (ECF No. 25, 6.) This "but-for" argument, however, overlooks both the Guidelines and Tenth Circuit precedent:

> Finding that a defendant performed an 'essential or indispensable role . . . is not determinative' of eligibility for [the minimal participant] adjustment. The court instead must focus on whether the defendant 'is substantially less culpable than the average participant in the criminal activity.'

*United States v. Yurek*, 925 F.3d 423, 445 (10th Cir. 2019) (quoting U.S.S.G. § 3B1.2 cmt. n.3(C)). In other words, the mere fact that Ryan may have been the "but-for" cause of the chain of "criminal activity" (namely, the obstruction knowingly and intentionally engaged in by Chacon) does not disqualify him from receiving the "minimal participant" mitigating role adjustment. Instead, per

the Guidelines, the inquiry must focus on whether Ryan "is substantially less culpable" than Chacon. U.S.S.G. § 3B1.2 cmt. n.3(A). Because all parties agree that Ryan had no subjective intent to interfere with the then-ongoing criminal investigation of Loya, Ryan is substantially less culpable than Chacon. This is supported by the government's own charging decisions, as Chacon was charged with and pled guilty to a 20-year felony (18 U.S.C. § 1519), while Ryan was charged with and pled guilty to a five-year felony (18 U.S.C. § 1505). Therefore, the government erred in the calculation of its recommended Guidelines range by failing to include a four-offense-level decrease pursuant to U.S.S.G. § 3B1.2(a).

Once the enhancement for "substantial interference with the administration of justice" is removed, Ryan's offense level should be decreased by three points, from 16 to 13. *See* U.S.S.G. § 2J1.2(b)(2). Similarly, once and the "minimal participant" mitigating role adjustment is applied, Ryan's offense level should further be decreased by four points, from 13 to 9. *See* U.S.S.G. § 3B1.2(a). The government agrees that Ryan's criminal history score is zero, which places him in Criminal History Category I. (ECF No. 34, 3.) Because Ryan's offense level is nine and because he falls within criminal history category I, the Guidelines range should be 4 to 10 months. *See* Sentencing Table. This puts Ryan within Zone B, making him eligible for a sentence of probation in combination with home detention pursuant to U.S.S.G. § 5B1.1(a)(2). *See id.*

## II.   THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND HISTORY AND CHARACTERISTICS OF THE DEFENDANT DO NOT SUPPORT THE GOVERNMENT'S RECOMMENDED SENTENCE.

The nature and circumstances of this offense are truly unique. As noted, the government will not dispute that Ryan (1) did not act *with the purpose* of obstructing justice; (2) did not act with the intention of gaining any *material benefit* from his conduct; and (3) at the time of the

offense, *did not foresee* that his conduct threatened to obstruct an investigation. The government's argument that Ryan disclosed "highly sensitive details of a search warrant . . . *in an intentional effort to obstruct a criminal investigation*" (ECF No. 34, 4 (emphasis added)), is technically accurate but stretches the facts. Ryan did not contemplate the impact his actions could or would have on any governmental activity. Plea Agreement ¶ 26 (the parties agree that Ryan had no contact with Loya "concerning the investigation or anything else;" Ryan, moreover, "assumed Chacon **would not share** this sensitive information with [Loya] or anyone else. . . .") (emphasis added). The government tacitly acknowledges this fact by noting that Ryan merely "*should have foreseen* that Chacon would share the information with the target of the search warrant." (*Id.* (emphasis added).) In other words, Ryan acted recklessly but without malicious intent.

Likely realizing that the nature and circumstances of the offense favor Ryan, the government proceeds to detail, over the course of five pages, text messages unrelated to the crime with which Ryan was charged and to which he pled guilty. (ECF No. 34, 5-10.) That said, Ryan has been punished for the text messages by voluntarily resigning the bench and stipulating to public censure and disbarment; his self-inflicted humiliation has been publicized in virtually every local and many national media outlets. Indeed, the disbarment order specifically cites violations of Colorado Judicial Conduct Rules 2.9 and 2.10, which Ryan violated because of his text messages.

Anthea Carrasco, the former Chief Deputy District Attorney of Weld County, wrote to this Court and explained that Ryan should not be sentenced for his text messages because he already has been punished for that conduct by voluntarily stipulating to disbarment:

> I certainly hope that this Court will be able to see the faulty logic in any argument that Ryan deserves to be sentenced to prison for ugly and immature comments in text messages, or that Ryan deserves to be sentenced to prison for making comments that were unbecoming of the bench. Undoubtedly those actions deserved consequences, and those

consequences were appropriately doled out when Ryan was disbarred and forever lost the privilege of practicing law. This Court, however, must determine what sentence is appropriate for the crime Ryan has admitted to committing, and only that.

(ECF No. 41-1, 7-8.)  We submit that Ryan should be sentenced for the crime to which he pled guilty, not ethical lapses over text message for which Ryan already has formally been punished. *See United States v. Courtney*, 76 F. Supp. 3d 1267, 1303 (D.N.M. 2014) ("That [defendant] has already been seriously reputationally punished reduces the need for the Court to impose further punishment and puts downward pressure on the sentence."). The government also overlooks Ryan's many positive contributions, including being named as a "Reunification Hero" by the ABA Center on Children and the Law. (ECF No. 41-1, 12 ("Magistrate Kamada has emphasized the importance of reunification" and "continues to work alongside other child welfare professionals to develop best practices that can benefit families and children.").)

## III.   THE GOVERNMENT'S RECOMMENDED SENTENCE FAILS TO CONSIDER THE SIGNIFICANT PUNISHMENT RYAN ALREADY HAS RECEIVED.

The government, employing surprisingly generalized/abstracted reasoning, argues that its recommended sentence of 21 months' imprisonment would "remind the defendant, and others, that the law deserves respect." (ECF No. 34, 11.) Nowhere in its brief, however, does the government discuss the significant punishment Ryan already has received for his crime. *See United States v. Barnes*, 890 F.3d 910, 919 (10th Cir. 2018) (recognizing that sentencing courts may consider circumstances such as the defendant's loss of his profession and the impact of sentencing on the defendant's family in fashioning an appropriate sentence). Had the government considered this factor, it would recognize that Ryan, more than anyone, is keenly aware of the consequences of his actions (and that those consequences are likely known to every person Ryan has interacted with – or will interact with – in personal and professional settings for decades).

-13-

Ryan, in short, has paid (and is today paying) an exceptional personal, professional, health, and emotional prices for his conduct not faced even by a typical murderer, bank robber, or cartel drug dealer. Once one of the youngest diverse judges ever appointed to the bench in Colorado, Ryan is a soon-to-be felon who will never practice law again. He has cooperated from day one, including by opening his personal communications to the government and publicly admitting his wrongdoing to protect the judiciary from further embarrassment.

Ryan's fall from grace has been as complete as it has been devastating. The distance Ryan has fallen—including his disbarment, public censure, and the significant difficulty he will have supporting his family going forward—itself promotes respect for the law and provides just punishment for the offense. *See Courtney*, 76 F. Supp. 3d at 1303 ("[Defendant] was, before this crime, an upstanding member of the community with a strong, budding business reputation. This conviction, thus, inflicts a punishment on [defendant] that it might not inflict even on other first-time offenders, let along recidivists.").

## IV.   GENERAL DETERRENCE DOES NOT SUPPORT THE GOVERNMENT'S RECOMMENDED SENTENCE.

The government argues that general deterrence supports its recommended sentence because Ryan's crime was "based on what he stood to lose," and, therefore, the Court should "deter other public officials who might consider engaging in similar behavior." (ECF No. 34, 12.) As an initial matter, the government's reliance on *United States v. Martin* is misplaced, because this by everyone's account is not a case where Ryan calculated the "*financial* gain and risk of loss." 455 F.3d 1227, 1240 (11th Cir. 2006) (emphasis added). As the plea agreement makes clear, Ryan had no financial motivation whatsoever. *See* Plea Agreement ¶ 22.

Nor was Ryan's crime based "on what he stood to lose." Ryan did not, in the government's words, "calculate[] that the reward of protecting his best friend from criminal exposure outweighed the risk of harming an ongoing criminal investigation." (ECF No. 34, 12.) Although Ryan no doubt acted recklessly, he subjectively believed Chacon "*would not share* [the] sensitive information with [Loya] or anyone else." Plea Agreement ¶ 26 (emphasis added). In short, the negotiated factual basis in the plea agreement cannot be reconciled with the government's late-developed theory that Ryan, at the time, engaged in a subjective risk/reward calculus that took into account the possibility of harming an ongoing investigation.

Even if the government was correct about Ryan's motivations, moreover, general deterrence still does not support its recommended ratcheted-up sentence. To the extent Ryan had a financial motivation, his disbarment and soon-to-be felony conviction will permanently impair his employment opportunities for the rest of his life. To the extent Ryan's crime was based "on what he stood to lose," namely, his friendship with Chacon, Chacon will soon be sentenced for a federal felony carrying a 20-year maximum sentence. The government also overlooks the massive notoriety this case, which has in almost every reporting been *miscast* as involving the knowing obstruction of a narcotics investigation, has generated over the past two years. Given Ryan's well-publicized downfall, other public officials cannot fail to understand that obstruction crimes do not pay and can lead to personal and professional ruin. A sentence of incarceration is not required to serve any general deterrence objectives.

## V. __CONCLUSION__

This Court should reject the government's recommended sentence of 21 months' imprisonment because it is greater than necessary to comply with the goals of sentencing.

DATED this 21st day of July, 2021.

Respectfully submitted,

**PERKINS COIE LLP**

By: *s/ Michael L. Bender*
    Michael L. Bender
    MBender@perkinscoie.com
    T. Markus Funk
    MFunk@perkinscoie.com
    1900 Sixteenth Street, Suite 1400
    Denver, CO  80202-5255
    Telephone:  303.291.2300
    Facsimile:  303.291.2400

**Attorneys for Defendant**
**RYAN KAMADA**

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2021, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system which will send notification of such filing to the following:

- **Bryan David Fields**
  bryan.fields3@usdoj.gov
- **John Patrick Taddei**
  john.taddei@usdoj.gov

By: *s/ Michael L. Bender*
      Michael L. Bender
      Perkins Coie LLP
      1900 Sixteenth Street, Suite 1400
      Denver, CO  80202-5255
      Telephone:  303.291.2300
      Facsimile:  303.291.2400
      MBender@perkinscoie.com

      **Attorneys for Defendant**
      **RYAN KAMADA**